# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Steven Pliam and Anjali Ganapathy,

                        Plaintiffs,

                                                    Civ. No. 11-3720 (RHK/JSM)
                                                    **MEMORANDUM OPINION**
                                                     **AND ORDER**

v.

Cendant Mortgage Corporation, *et al.*,

                        Defendants.

---

Michael J. Keogh, Keogh Law Office, Saint Paul, Minnesota, for Plaintiffs.

Aaron A. Dean, Jesse R. Orman, Lucas T. Clayton, Fabyanske, Westra, Hart & Thomson, P.A., Minneapolis, Minnesota, for Defendants.

---

## INTRODUCTION

This action arises out of a mortgage and promissory note signed by Plaintiffs Steven Pliam and Anjali Ganpathy. Defendant Cendant Mortgage Corporation—previously known as Burnett Home Loans and now known as PHH Mortgage Corporation ("PHH")—was the mortgagee. After working with PHH to modify the mortgage, Plaintiffs stopped making monthly payments. PHH then foreclosed by advertisement, and Plaintiffs brought the instant action alleging defective foreclosure, breach of contract, violation of the Real Estate Settlement Procedures Act (RESPA), and violations of various Minnesota statutes. Defendants now move to dismiss Plaintiffs' Amended Complaint. For the reasons that follow, the Court will grant the Motion.

## BACKGROUND

Plaintiffs purchased property located at 5053 Newton Avenue South in Minneapolis ("the Property") in November 2002. (Am. Compl. ¶¶ 12-13.) For the last five years, they have been living in Boston and India. (Id. ¶¶ 16-17.)

After Plaintiffs defaulted on their mortgage payments, PHH commenced foreclosure proceedings in May 2009. (Id. ¶¶ 19-21.) However, in March 2010, PHH offered, and Plaintiffs agreed to enter into, a loan modification agreement ("the Agreement"). (Id. ¶ 26 & Ex. B.) PHH drafted the Agreement, and Plaintiffs signed it on March 29, 2010. (Id. ¶¶ 23, 26-27.) As part of the Agreement, they paid a $4,000 loan-modification fee, and began making modified payments under the Agreement in May 2010. (Id. ¶ 27, 31 & Ex. B.) The Agreement was recorded in the Hennepin County Recorder's Office on August 24, 2010. (Id., Ex. C.)

In September 2010, Plaintiffs contacted PHH to inquire why no PHH representative had signed their copy of the Agreement. (Id. ¶ 32 & Ex. D.) PHH responded that, even though the Agreement was valid unsigned, it would execute the document and have it re-recorded. (Id. ¶ 33.) Plaintiffs then stopped making payments under the Agreement. (Id. ¶ 34.) Nevertheless, PHH did execute the Agreement and record it with Hennepin County on December 21, 2010. (Id., Ex. E.)

Because Plaintiiffs failed to make the agreed-upon payments, PHH commenced foreclosure proceedings on May 5, 2011. (Id. ¶ 38.) Plaintiffs did not cure their default,

and PHH eventually purchased their note at a sheriff's sale.[1] (Id. ¶ 39; Compl. Ex. G.)[2] On July 20, 2011, PHH assigned the Sheriff's Certificate, and with it the ownership rights in the Property, to Fannie Mae. (Am. Compl., Ex. H.)

Plaintiffs later sent PHH a Qualified Written Request ("QWR") in accordance with the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), asking for information concerning the mortgage owner's identity, an accounting of payments, credits and debits to the mortgage, and when PHH obtained servicing rights to the mortgage. (Id. ¶¶ 41, 66, Ex. I.) They received no response. Plaintiffs never sent a QWR to Fannie Mae.

Plaintiffs commenced this action on December 29, 2011. After Defendants moved to dismiss (Doc. No. 7), Plaintiffs filed an Amended Complaint (Doc. No. 10) and Defendants filed the instant Motion to Dismiss (Doc. No. 11). The Court held a hearing on April 2, 2012,[3] the issues have been fully briefed, and the Motion is now ripe for disposition.

---

[1] A sheriff's sale, also called a judicial sale, is "a sale, commonly by auction, conducted by a sheriff or other court officer to carry out a decree of execution or foreclosure issued by a court." Black's Law Dictionary 1376 (6th ed. 1990).

[2] Although the Amended Complaint references an "Exhibit G," Plaintiffs actually attached two documents labeled "Exhibit F." From context, however, it is clear to the Court that they intended to attach the same Exhibit G to the Amended Complaint as they did to the Complaint.

[3] Because Plaintiffs' counsel did not appear at the duly noticed hearing, the Court did not hear oral arguments and took the Motion under advisement based upon the written submissions of the parties.

**STANDARD OF DECISION**

The Supreme Court set forth the standard for evaluating a Rule 12(b)(6) motion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 547. A "formulaic recitation of the elements of a cause of action" will not suffice. Id. at 555; accord Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Rather, the complaint must set forth sufficient facts to "nudge[] the[] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Stated differently, the plaintiff must "assert facts that affirmatively and plausibly suggest that [he] has the right he claims . . . , rather than facts that are merely consistent with such a right." Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007) (citing Twombly, 550 U.S. at 554–57).

When reviewing a motion to dismiss, the Court "must accept [the] plaintiff's specific factual allegations as true but [need] not . . . accept a plaintiff's legal conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556). The complaint must be construed liberally, and any allegations or reasonable inferences arising from the complaint must be interpreted in the light most favorable to the plaintiff. Tombly, 550 U.S. at 554-56. A complaint should not be dismissed simply because the Court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Id. at 556. "Ultimately, evaluation of a complaint upon a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Braden v. Wal-Mart

4

Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).[4]

## ANALYSIS

Plaintiffs' case cobbles together both state and federal claims in an attempt to invalidate the foreclosure. After carefully reviewing the record and the asserted causes of action, however, the Court concludes that none of Plaintiffs' claims passes muster.

In Count One, Plaintiffs assert that PHH foreclosed after it had failed to record the mortgage's assignment to Fannie Mae. Minnesota law requires a party instituting foreclosure proceedings to (1) record all assignments of the mortgage and (2) list each assignee in the foreclosure notice. Minn. Stat. §§ 580.02(3), 580.04(a)(1). Plaintiffs allege that the mortgage had been assigned to Fannie Mae when PHH instituted foreclosure proceedings and that Fannie Mae was not listed on the Notice of Foreclosure, rendering the foreclosure invalid. See Jackson v. Mortg. Elec. Registration Sys., Inc., 770 N.W.2d 487, 494 (Minn. 2009) (a party foreclosing by advertisement must show exact compliance with statutory requirements, or the foreclosure proceeding is void). Defendants respond that Plaintiffs have not overcome the presumption of accuracy given to the sheriff's certificate of sale. See Minn. Stat. § 580.19 ("Every sheriff's certificate of sale . . . shall be prima facie evidence that all requirements of law in that behalf have been complied with . . . ."). The Court agrees. Bald allegations that a mortgage was assigned before foreclosure are insufficient to rebut the presumption of accuracy given to a sheriff's certificate. See Bazil v. Wells Fargo Bank, N.A., Civ. No. 11-1206, 2011 WL

---

[4] Where, as here, public records have been submitted with a motion to dismiss, the Court may consider them without converting the motion into one for summary judgment. E.g., Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

4442835, at *5 (D. Minn. Sept. 22, 2011) (Nelson, J.). Even at the pleading stage, a plaintiff must proffer more than speculation to overcome this presumption. Id. Because Plaintiffs have not done so here, their defective foreclosure claim must be dismissed.

Count Two alleges that PHH breached the Agreement by accepting Plaintiffs' payments but failing to execute and record the Agreement. The Court fails to understand exactly how such conduct constitutes breach of contract or has caused Plaintiffs any damage. Plaintiffs' brief only adds to the confusion, arguing that but for controlling Minnesota law, they would be able to bring a claim for breach of the implied covenant of good faith and fair dealing. Yet, Plaintiffs nowhere explain how the failure to record the signed Agreement constitutes a breach of the Agreement or the implied covenant of good faith and fair dealing, and in any event, it is clear that PHH did, in fact, record a signed copy of the Agreement in December 2010. For these reasons, Plaintiffs' breach-of-contract claim must be dismissed.

Count Three alleges that PHH violated RESPA by failing to "acknowledge receipt of [the QWR] within [twenty] days" and by failing to provide "a written explanation or clarification that include[d the] information requested . . . or an explanation of why the information requested is unavailable" within sixty days. See 12 U.SC. § 2605(e)(1), (2). The Amended Complaint, however, does not allege that this failure resulted in any damages. While RESPA itself does not set a pleading standard, courts have interpreted the statute to require a showing of pecuniary damages in order to state a claim. See, e.g., Allen v. United Fin. Mortg. Corp., 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009); Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) ("[A]lleging

6

breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages."). Even under a liberal reading, no fact alleged in the Amended Complaint shows that Plaintiffs suffered any harm as a result of PHH's failure to respond to the QWR. This defect is fatal to their RESPA claim.

Count Three also alleges that PHH engaged in a pattern or practice of noncompliance with RESPA, entitling Plaintiffs to additional damages under 12 U.S.C. § 2605(f)(1)(B). However, Plaintiffs have failed to allege any *facts* to support such a claim. Even if the Court were to conclude that Plaintiffs had sufficiently pleaded a RESPA violation vis-à-vis them, this would be insufficient to show that PHH engaged in a "pattern or practice of noncompliance." Compare Garcia v. Wachovia Mortg. Corp., 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009) (alleging one instance of failing to respond to a QWR is insufficient to state a claim for damages based on a pattern or practice), with Ploog v. HomeSide Lending, Inc., 209 F. Supp. 2d 863, 868 (N.D. Ill. 2002) (alleging five instances of failing to respond to QWR was sufficient to plead a pattern or practice). Accordingly, Plaintiffs' pattern or practice claim must be dismissed.

Count Four-(a)[5] alleges that Defendants violated Minn. Stat. § 58.13, subd. 1(8), which provides that no mortgage originator or servicer shall "violate any provision of any other applicable state or federal law regulating residential mortgage loans[.]" But to

---

[5] The Amended Complaint contains two counts entitled "Count Four." For clarity's sake, the Court will refer to the first "Count Four" as "Count Four-(a)," and the second "Count Four" as "Count Four-(b)."

establish violations of state or federal law, Plaintiffs largely re-assert their earlier claims, which as noted above, fail to adequately plead any violations of law.

The only "new" allegation in Count Four-(a) is that PHH charged Plaintiffs an excessive lender fee. Minnesota law prohibits a mortgage originator modifying a residential mortgage from "includ[ing] in the principal amount . . . all or any portion of any lender fee in an aggregate amount exceeding five percent of the loan amount." Minn. Stat. § 58.137. Plaintiffs allege that PHH charged a lender fee of $12,322.36, which is greater than five percent of their loan amount, $236,750.00. Yet, the record shows that the Agreement increased Plaintiffs' loan by $8,322.36, which is less than five percent. Plaintiffs have come up with a higher figure by adding a $4,000 payment referenced in the letter offering them a loan modification. Upon examining the loan documents and the Agreement, however, it is clear to the Court that the $4,000 was merely an upfront, partial payment of the modification fee ($8,322.36). (See Am. Compl. Ex. B.) In total, the cost of Plaintiffs' loan modification was $8,332.36, which is less than five percent of the loan amount. Accordingly, the Court concludes that Plaintiffs have not sufficiently pleaded a claim under § 58.137.

Count Four-(b) asserts a violation of Minn. Stat. § 8.31, which creates a private cause of action under various mortgage regulations. This claim relies on a violation of § 58.137 to create liability, effectively reasserting Count Four-(a). Because the Court concludes that Plaintiffs' Count Four-(a) fails, Count Four-(b) likewise fails.

Finally, Plaintiffs ask the Court to allow them to further amend their Amended Complaint should it be determined that any of their claims is legally insufficient. (Mem.

in Opp'n at 12.) Although courts "should freely give leave to amend when justice so requires," Fed. R. Civ. P. 15(a)(2), plaintiffs do not enjoy an absolute right to amend their complaint. See Drobnak v. Andersen Corp., 561 F.3d 778, 787-88 (8th Cir. 2009). Here, Plaintiffs have already taken two bites from the pleading apple. Defendants laid bare the defects in Plaintiffs' claims by moving to dismiss the initial Complaint, and Plaintiffs filed their Amended Complaint three weeks later. Despite being on notice of potential deficiencies in their claims, however, Plaintiffs' Amended Complaint simply tacked on a RESPA claim; it did nothing to rectify the pleading failures. Moreover, established procedures exist for seeking to amend a Complaint: file a Motion under Federal Rule of Civil Procedure 15 and follow the strictures of Local Rule 15.1, including proffering a proposed amended complaint to the Court. See Dudek v. Prudential Sec., Inc., 295 F.3d 875, 880 (8th Cir. 2002) (denying a plaintiff's request to amend where the plaintiff did not submit a motion for leave to amend or provide a proposed amended pleading). Plaintiffs have not followed these procedures. Accordingly, the Court will deny Plaintiffs' request for leave to amend their Amended Complaint, and dismiss their claims with prejudice.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. No. 11) is **GRANTED**, and the Amended Complaint (Doc. No. 10) is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  April 26, 2012                                        s/Richard H. Kyle
                                                             RICHARD H. KYLE
                                                             United States District Judge